1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10  ROBERT ALVIN WOOLEVER, JR.,

11          Petitioner,                          No. CIV S-09-126 CHS

12      vs.

13  RAUL LOPEZ,

14          Respondent.                ORDER

15  _____/

16                        I.  INTRODUCTION

17          Petitioner Woolever, a state prisoner, proceeds pro se with an amended petition

18  for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner stands convicted of various

19  offenses in the San Joaquin County Superior Court, case number SF100485A, for which he is

20  currently serving a determinate prison term of 22 years.  This matter is submitted for decision

21  and the parties have consented to jurisdiction by United States Magistrate Judge.

22                        II.  BACKGROUND[1]

23          Petitioner lived with his girlfriend, J.N.  On Valentine's Day of 2006, the couple

24  got into an argument while in the car.  Petitioner slapped J.N. and she grabbed a crowbar from

25  _____

26      [1] *See People v. Woolever*, No. C055060, 2008 WL 2030624 (Cal. Ct. of App. 3rd Dist.
     May 13, 2008).

                                    1

1  under the car seat to defend herself.  Petitioner took the bar from her and threatened to "fuck

2  [her] up and kill [her]" if she did not "shut up."

3          In April 2006, petitioner's young sons were visiting the apartment and petitioner

4  took them out.  When they returned, J.N. reported that the boys' mother had called to say that

5  they were late in returning to her house.  Defendant became angry and stomped on J.N.'s face.

6          J.N. and petitioner broke up on May 16, 2006.  On May 19, petitioner called to

7  say that he would come by the apartment to pick up his things, but J.N. told him that she would

8  bring the items to work and he could pick them up there.

9          Despite this conversation, petitioner came to the apartment later that night.  J.N.

10  told him to "grab [his] stuff and get out."  Petitioner went into the kitchen and began to put

11  frozen meat from the freezer into a large garbage bag. When J.N. told defendant she had called

12  his parole officer, defendant became angry and hit her in the head with the bag of meat. He also

13  ripped the telephone from the wall.

14          J.N. called the police, and subsequently went to the hospital in an ambulance. She

15  received eight stitches for the wound to her head.

16          Petitioner began to call J.N. at home and at work, as many as 20 times per day. In

17  these calls, he often threatened to kill her and J.N. believed these threats.  Several times J.N.

18  received threatening calls from a woman who identified herself as petitioner's sister. On one

19  occasion, petitioner threatened to come over to J.N.'s house, and J.N. saw him drive past the

20  apartment complex.

21          An information charged petitioner with inflicting corporal injury on a cohabitant

22  and causing great bodily injury (count 1), stalking J.N. between May 19 and June 4, 2006 (count

23  5), damaging a utility line (count 3), and two counts of making criminal threats, one occurring on

24  or about May 19 (count 2) and one occurring on or about May 29 (count 4).

25          At trial, J.N. described these events, police officers described the state of the

26  apartment on May 19, and a doctor described his treatment of J.N.'s injury.  The prosecution

1    introduced a letter petitioner wrote to J.N. after the preliminary hearing in which he asked her to

2    say she had hurt herself by tripping over defendant's belongings.  The prosecutor also introduced

3    evidence about petitioner's prior acts of domestic violence against a former girlfriend, A.R.

4              The jury acquitted petitioner on the criminal threats charge alleged in count 2, but

5    convicted him of all other counts as charged.  The trial court found he had previously been

6    convicted of domestic violence, had a prior conviction for making criminal threats, and had

7    served a prison sentence for that offense.  The court sentenced him to an aggregate prison term of

8    22 years.

9              Petitioner appealed to the California Court of Appeal, Third District.  The state

10   appellate court held that the one year sentence enhancement for the prior offense should be

11   stricken but affirmed the judgment and sentence in all other respects.  A petition for review to the

12   California Supreme Court was denied.

## III.  GROUNDS FOR RELIEF

13

14   Ground One:   The trial court erroneously admitted evidence of prior acts of domestic

15                 violence through the testimony of petitioner's ex-girlfriend, A.R.

16   Ground Two:   The trial court erroneously failed to limit the jury's use of the testimony of

17                 petitioner's ex-girlfriend.[2]

## IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

18

19             An application for writ of habeas corpus by a person in custody under judgment of

20   a state court can be granted only for violations of the Constitution or laws of the United States.

21   28 U.S.C. §2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

22   *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

23   This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

24

25       [2] Pursuant to the order filed on March 8, 2011, the remaining grounds in the amended
     petition (grounds three through six) were dismissed as time barred by the applicable one year
26   statute of limitations.

1   the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lindh v. Murphy*, 521

2   U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359 (9th Cir. 1999).  Under

3   AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

4   state court proceedings unless the state court's adjudication of the claim:

5           (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
6           determined by the Supreme Court of the United States; or

7           (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
8           State court proceeding.

9   28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

10  *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

11          This court looks to the last reasoned state court decision in determining whether

12  the law applied to a particular claim by the state courts was contrary to the law set forth in the

13  cases of the United States Supreme Court or whether an unreasonable application of such law has

14  occurred. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002), *cert. dismissed*, 538 U.S. 919.  If

15  not rebutted with clear and convincing evidence, the state court's factual findings are presumed

16  correct.  28 U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 336 F.3d 992, 1000 (9th Cir. 2004).  It is the

17  habeas corpus petitioner's burden to show the state court's decision was either contrary to or an

18  unreasonable application of federal law. *Woodford v. Visciotti*, 537 U.S. 19, 123 S. Ct. 357, 360

19  (2002).

## V.  DISCUSSION

20

21          A.      Ground One: Admission of A.R.'s Testimony

22          Petitioner claims that the trial court erroneously admitted evidence of prior acts of

23  domestic violence through the testimony of his ex-girlfriend, A.R., in violation of his right to a

24  fair trial and an impartial jury trial.

25  /////

26  /////

4

1          1.          Additional Background[3]

2          With some exceptions, California evidentiary law generally prohibits the

3   admission of other acts to prove propensity to commit the charged acts.  Cal. Evid. Code § 1101.

4   In addition, a trial court may "in its discretion exclude evidence if its probative value is

5   substantially outweighed by the probability that its admission will (a) necessitate undue

6   consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues,

7   or of misleading the jury."  Cal. Evid. Code § 352.

8          Under one exception to the general rule prohibiting propensity evidence, "in a

9   criminal action in which the defendant is accused of an offense involving domestic violence,

10  "evidence of the defendant's commission of other domestic violence is not made inadmissible by

11  Section 1101 if the evidence is not inadmissible pursuant to [California Evidence Code] Section

12  352."  Cal. Evid. Code §1109(a)(1).  The statute establishes a presumptively admissible time

13  frame for such evidence and permits the introduction of acts occurring within 10 years of the

14  charged offense; older offenses may also be admitted if the court finds their admission to be in

15  the interest of justice.  Cal. Evid. Code § 1109(e).

16         At petitioner's trial, the court admitted the testimony of A.R., who had dated

17  petitioner for three months in 1997, nine years earlier.  A.R. described three incidents of

18  domestic violence.  On one occasion, petitioner and A.R. were at a friend's house and A.R.

19  decided to leave.  Petitioner did not want her to go and followed her outside.  He grabbed her

20  around the throat and choked her, although she could still breathe.  On another occasion, A.R.

21  wanted to leave the apartment because petitioner was in a bad mood.  Petitioner pushed her and

22  again choked her.  On the third occasion, petitioner came to A.R.'s apartment late at night.

23  When A.R. told him to leave, he refused and the two argued.  Petitioner hit A.R. three times,

24  landing blows on her legs and on her back.  A.R. screamed for her neighbors to call 911.

25

26         [3] *See People v. Woolever*, *supra*, slip op. at 2-3.

1   Petitioner threw a beer bottle at A.R., and she threw it back at him.

2           In admitting A.R.'s testimony, the trial court noted that these acts occurred nine

3   years earlier (within the statutory time period of section 1109(e)), and that they could not be

4   considered stale because petitioner had not led a blameless life in the interim.  The court

5   commented that the events described by A.R. were "not worse" than those charged in the present

6   case and therefore were not unduly prejudicial.  The court concluded:

7           I know one of the acts occurred because we have a conviction on
            August 1, 1997, which deals with the degree of certainty that it
8           happened, and I also find that the three acts do not create an undue
            consumption of time or an undue prejudice against the defendant.
9           Yes, they are prejudicial, but their probative value is more relevant
            than their prejudice to show he has not led a blameless life in this
10          type of conduct or to give a false air of credibility that it only
            happened one time with [the victim]. [¶] So, I am going to leave
11          the three acts with regard to [A.R.] in under [Evidence Code
            section] 352.

12

13  *People v. Woolever*, *supra*, at 3.  The trial court did, however, exclude evidence of other acts of

14  domestic violence involving another victim.  On appeal, the state court found no error, holding

15  that the trial court "acted well within its discretion in admitting A.R.'s testimony about other

16  incidents of domestic violence." *People v. Woolever*, *supra*, at 4.

17                  2.      Analysis

18          Petitioner argues that the probative value of A.R.'s testimony was slight because

19  (1) the prior acts involved misdemeanor rather than felony conduct; (2) the acts did not include

20  stalking or criminal threats; and (3) they were remote, having occurred nine years earlier.  He

21  asserts the risk of prejudice was exacerbated by the fact that two of the prior incidents did not

22  result in criminal prosecution, making it likely that the jury would seek to punish him for the

23  earlier acts.

24          The United States Supreme Court has acknowledged that "rules concerning

25  evidence of prior offenses are complex, and vary from jurisdiction to jurisdiction." *Spencer v.*

26  *Texas*, 385 U.S. 554, 560 (1967).  Such evidence is often excluded except under various

1 circumstances and exceptions.  *Id*. at 560-61.  "The defendant's interests are protected by

2 limiting instructions... and by the discretion residing with the trial judge to limit or forbid the

3 admission of particularly prejudicial evidence even though admissible under an accepted rule of

4 evidence." *Id*. at 561.

5          A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas

6 corpus relief only if it rendered the state proceedings so fundamentally unfair as to violate due

7 process. *See generally Williams v. Taylor,* 529 U.S. 362, 375 (2000); *see also Drayden v. White*,

8 232 F.3d 704, 710 (9th Cir. 2000).  A "petitioner bears a heavy burden in showing a due process

9 violation based on an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir.

10 2005).

11          The specific question whether the admission of evidence of prior crimes or

12 propensity evidence in general violates due process appears to be an open question in the

13 Supreme Court's jurisprudence.  *See Estelle v. McGuire*, 502 U.S. 62, 75 n.5 (1991) ("[W]e

14 express no opinion on whether a state law would violate the Due Process Clause if it permitted

15 the use of 'prior crimes' evidence to show propensity to commit a charged crime."); *Alberni v.*

16 *McDaniel*, 458 F.3d 860, 866-67 (9th Cir. 2006) (noting that the Supreme Court has denied

17 certiorari at least four times on the propensity evidence issue reserved in *McGuire*), *cert. denied*,

18 549 U.S. 1287 (2007).

19          In *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009), the Ninth Circuit

20 explained:

21          Under AEDPA, even clearly erroneous admissions of evidence that
             render a trial fundamentally unfair may not permit the grant of
22          federal habeas corpus relief if not forbidden by "clearly established
             Federal law," as laid out by the Supreme Court. 28 U.S.C. §
23          2254(d). In cases where the Supreme Court has not adequately
             addressed a claim, this court cannot use its own precedent to find a
24          state court ruling unreasonable. *Musladin,* 549 U.S. at 77, 127
             S.Ct. 649.
25
             The Supreme Court has made very few rulings regarding the
26          admission of evidence as a violation of due process. Although the

1
2
3
4
5
6

> Court has been clear that a writ should be issued when
> constitutional errors have rendered the trial fundamentally unfair,
> *see Williams,* 529 U.S. at 375, 120 S.Ct. 1495, it has not yet made
> a clear ruling that admission of irrelevant or overtly prejudicial
> evidence constitutes a due process violation sufficient to warrant
> issuance of the writ. Absent such "clearly established Federal law,"
> we cannot conclude that the state court's ruling was an
> "unreasonable application." *Musladin,* 549 U.S. at 77, 127 S.Ct.
> 649. Under the strict standards of AEDPA, we are therefore
> without power to issue the writ on the basis of Holley's [erroneous
> admission of evidence] claims.

7   *Holley*, 568 F.3d at 1101.

8          Since the right petitioner asserts- to be free from admission of prejudicial

9   evidence of prior bad acts- has not been clearly established by the Supreme Court as required by

10   AEDPA, relief cannot be granted.  *See* 28 U.S.C. § 2254(d); *Alberni*, 458 F.3d at 867; *accord*

11   *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (reaffirming *Alberni*).  In any event, the

12   admission of evidence of A.R.'s testimony did not render petitioner's trial fundamentally unfair

13   in violation of due process.  This claim is without merit.

14                    B.        Jury's Use of Evidence of Prior Domestic Violence

15          In a related claim, petitioner contends that the trial court erroneously failed to

16   instruct the jury that it could not use A.R.'s testimony when considering the stalking charge, in

17   violation of his right to due process and a fair trial.

18          On appeal, the state court agreed with petitioner that the trial court erred in

19   permitting the prosecutor to use past acts of domestic violence as evidence for inferring that he

20   stalked the victim in this case; this was because the crime of stalking does not meet the statutory

21   definition of a crime of domestic violence for purposes of Evidence Code section 1109.

22   Nevertheless, the state court found that the error was harmless.  The state court reasoned, in

23   relevant part, that (1) the prosecutor did not use A.R.'s testimony to establish defendant's guilt

24   on the stalking charge; (2) similarly, nothing in the instructions or the prosecutor's arguments

25   linked the domestic violence against A.R. to the stalking of J.N.; and (3) the jury was instructed

26   not to consider the propensity evidence for any purpose other than to find "that the defendant was

1   disposed or inclined to commit domestic violence and... that the defendant was likely to commit

2   inflicting injury upon a cohabitant or former cohabitant as charged here." *People v. Woolever*,

3   *supra*, at 4-5.

4          As already discussed, the Supreme Court has not clearly established a principle

5   that admission of prior crimes or prior bad acts may violate the Constitution, even where the

6   evidence is irrelevant or prejudicial. *Holley*, 568 F.3d at 1101; *Alberni*, 458 F.3d at 867; *Mejia*,

7   534 F.3d at 1046 (9th Cir. 2008).  In addition, no relief is available for the alleged error in

8   application of section 1109 of the California Evidence Code. *See* 28 U.S.C. §2254(d); *Estelle v.*

9   *McGuire*, 502 U.S. at 71-72.

10                              VI.  CONCLUSION

11          For all the foregoing reasons, the application for writ of habeas corpus is hereby

12   DENIED.

13   DATED: August 2, 2011

14                                   CHARLENE H. SORRENTINO
                                     UNITED STATES MAGISTRATE JUDGE
15

16

17

18

19

20

21

22

23

24

25

26